UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

EGRID CHRISTINE JIMENEZ BORBOR,

                          Petitioner,                    21-CV-6325-FPG

v.

                                                DECISION AND ORDER

MERRICK GARLAND, et al.,

                          Respondents.
───────────────────────────────────

## INTRODUCTION

Petitioner Egrid Christine Jimenez Borbor brought this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. Respondents Merrick Garland, Alejandro Mayorkas, Thomas Feeley, Jeffrey Searls, and Michael Ball are the alleged custodians of Petitioner. Presently before the Court is Respondents' motion to dismiss the petition. ECF No. 4. Specifically, Respondents assert that Petitioner's filing is premature as Petitioner's order of removal was not final until May 24, 2021, and, regardless, Petitioner's continued detention is constitutional. *See generally id.* For the reasons set forth below Respondents' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are drawn from the submissions of Petitioner and Respondents. Petitioner was born in, and is a citizen of, Ecuador. In 1982, he first arrived in the United States. In 2015, Petitioner traveled to the United States from Ecuador and was deemed inadmissible by Customs and Border Patrol due to his criminal history. At that time, Petitioner was issued a Notice to Appear ("NTA") charging him as removable for conviction of a crime involving moral turpitude and for committing a controlled substance offense. Petitioner was then paroled into the United

States and issued a temporary permanent residence card. His actual permanent resident card was retained by Customs and Border Protection.

Following parole, Petitioner was arrested, convicted, and imprisoned on drug and weapons charges. In July 2020, the Department of Homeland Security served Petitioner for a Form I-261 Additional Charges of Inadmissibility/Deportability. On August 19, 2020, an Immigration Judge Ordered Petitioner to be removed to Ecuador based on the charges set forth in the NTA and denied Petitioner's application for cancellation of removal. On September 17, 2020, Petitioner filed an appeal of the decision with the Board of Immigration Appeals. The appeal was dismissed on May 24, 2021.

Travel document requests were issued to Petitioner on June 1, 2021, and DHS arranged for Petitioner to be interviewed by the Ecuadorian Consulate. Petitioner refused. On June 2, 2021, Petitioner filed his habeas petition in this Court. ECF No. 1. On June 7, 2021, DHS served Petitioner with a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g).

Petitioner has since filed a Petition for Review and Motion for Stay of Removal with the Second Circuit. ECF No. 6.[1]

## DISCUSSION

### I. Applicable Statute

Respondents first argue that Petitioner's action is premature because the order of removal did not become final until May 24, 2021, and pursuant to 8 U.S.C. § 1231, the government has a 90-day removal period following the final order, in addition to a presumptively reasonable six-month time to effect removal. *See* ECF No. 4-1 at 12. Respondents assert that Petitioner remains

---

[1] This Court's prior Decision and Order concerning the motion to stay removal, ECF No. 8, is VACATED. The motion was intended to be filed in this Court merely to provide the Court with notice of such proceedings rather than for the Court's consideration.

detained pursuant to 8 U.S.C. § 1231 notwithstanding the forbearance agreement that is in effect as a result of Petitioner's motion to stay in the Second Circuit. Recognizing this Court's prior decisions that the forbearance agreement renders a petitioner detained under § 1226,[2] Respondents ask the Court to reconsider that holding, especially in light of the recent decision in *Johnson v. Guzman Chavez,* 141 S. Ct. 2271 (2021), wherein the Supreme Court "rejected the same arguments used to support holding that a noncitizen subject to a forbearance stay is detained pursuant to § 1226." ECF No. 7 at 4.

The Immigration and Nationality Act (the "INA") authorizes the detention of aliens pending removal. Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B).

The Department of Homeland Security and the Second Circuit entered into a forbearance agreement in 2012, wherein the government "assured that removal will not occur" while a detainee—such as Petitioner—has a Petition for Review ("PFR") pending before the Court. *In re Immigration Petitioners for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012). Many district courts, including in this Circuit, including the undersigned,

---

[2] In Respondent's initial motion to dismiss the Petition, it asserts that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* ECF No. 4-1. Regardless of whether Petitioner is detained under § 1225(b) or § 1226, the analysis regarding the inapplicability of § 1231, as discussed herein, remains the same.

have determined that this forbearance agreement has the legal effect of a court-ordered stay of removal.  As such, courts have found that detainees with a pending PFR and motion to stay removal are not detained pursuant to § 1231.  *See, e.g.*, *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 795-96 (W.D.N.Y. 2019) (reaching such a holding); *Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases); *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 & n.4 (S.D.N.Y. July 2, 2019) ("[B]ecause of the government's forbearance policy, an alien who files a PFR and a stay motion in the Second Circuit obtains 'the functional equivalent of a stay order,' such that § 1231 no longer governs his detention") (collecting cases)).  However, other district courts have found the opposite, concluding that the forbearance agreement is not the equivalent of a stay.  *See, e.g.*, *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 186 (W.D.N.Y. 2020).

This Court does not agree that the Supreme Court's decision in *Guzman Chavez* justifies a departure from its prior holdings.  As articulated in *Vazques v. Garland*, No. 1:21-CV-00477 EAW, 2021 WL 3741589, at *2-3 (W.D.N.Y.  Aug. 24, 2021), the issue in *Guzman Chavez* was whether aliens subject to *reinstated* orders of removal, who had sought withholding that removal based on fear of persecution, were detained pursuant to § 1231 or § 1226.  141 S. Ct. at 2280.  In determining the detention fell under § 1231, the Court made clear that there was no question as to *whether* the alien could be removed, rather, the question was *where* the alien would be sent.  *Id.* at 2287.  Therefore, the Court found that the continued detention was governed by § 1231.

The court in *Vazques*, however, was not persuaded that *Guzman Chavez* undermined prior decisions in this Circuit regarding the impact of the forbearance agreement.  *Vazques*, 2021 WL 3741589, at *2.  Neither is this Court.  Indeed, while the Supreme Court in *Guzman Chavez* stated in *dicta* that § 1231 does not suggest that "*all* legal impediments must be eliminated before the

4

removal period begins," *Guzman Chavez*, 141 S. Ct. at 2291, prior decisions concerning the forbearance agreement do not rest on such a proposition. Rather, those decisions recognize that the forbearance agreement has the legal effect of a court-ordered stay, which is one of the impediments specifically listed in § 1231. Moreover, though the Court in *Guzman Chavez* made clear that *whether* the alien was subject to removal was not an issue, the Second Circuit indicated in the forbearance agreement that PFR cases are likely subject to decisions of *whether* the government can remove petitioners if the pending petition is ultimately denied. *In re Immigration Petitions*, 702 F.3d at 160. Thus, the Court cannot find a legitimate basis to disturb its prior decisions regarding the impact of the forbearance agreement. Petitioner is presently held under Section 1225(b).

## II.     Relief Sought

Petitioner asserts that: (1) the six-month presumptively reasonable initial period for Petitioner has passed and he is therefore entitled to a bond hearing; (2) his continued detention violates substantive due process; and (3) his continued detention violates procedural due process. *See* ECF No. 1. In response, Respondents assert that his continued detention is constitutional and his requests for release should be stricken. *See* ECF No. 4-1.

As an initial matter, Respondents assert—and Petitioner does not contest—that if the Court determines Petitioner to be subject to a non-final removal order, Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *Id.* at 8. Section 1225(b) applies to noncitizens designated as "arriving aliens" and "certain other aliens." *See* 8 U.S.C. § 1225(b) ("Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."). As such, Respondents claim, Petitioner's mandatory detention is constitutional.

Respondents point this Court to a variety of cases wherein courts have determined that aliens detained pursuant to § 1225(b) are not entitled to a bond hearing. *See* ECF No. 4-1 at 20. However, in each such case the petitioners were citizens and natives of foreign countries who were apprehended either just inside or just outside the United States border, after first entering the United States illegally. *See Figueroa v. Garland*, No. 20-CV-6677 EAW, 2021 WL 1602761, at *1 (W.D.N.Y. Apr. 26, 2021) (petitioner was a citizen and native of Honduras who was apprehended shortly after having illegally entered the country); *Kharshiladze v. Philips*, No. 20-CV-6423 EAW, 2021 WL 603059, at *1 (W.D.N.Y. Feb. 16, 2021) (petitioner was a citizen and native of Georgia who was apprehended shortly after having illegally entered the country); *see also Gonzalez Garcia v. Rosen*, 513 F. Supp. 3d 329, 331 (W.D.N.Y. 2021) (petitioner was a citizen and native of Honduras who was apprehended shortly after having illegally entered the country). On the contrary, Petitioner was admitted to the United States on April 1, 1982 as a Lawful Permanent Resident ("LPR"). ECF No. 4-2 ¶ 5. Then, in 2015, when he arrived at John F. Kennedy International Airport after traveling to Ecuador, he was placed in removal proceedings due to his prior convictions of crimes involving moral turpitude. *Id.* ¶ 9. He was then paroled into the United States and issued a temporary permanent residence card. *Id.*

This is an important distinction. Indeed, this Court agrees with the Ninth Circuit's discussion in *Rodriguez v. Robbins*, wherein the court recognized that, "'[i]t is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the Fifth Amendment,' and a[] [lawful permanent resident] whose absence is not prolonged is assimilated to that same constitutional status." *Rodriguez v. Robbins*, 715 F.3d 1127, 1142 (9th Cir. 2013) (quoting *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953)). On that basis, the court determined that it must construe § 1225(b) in

a manner to avoid constitutional concerns raised by its application to LPRs who enjoy the protections of due process. *Rodriguez*, 715 F.3d at 1142-43. Thus, the analysis concerning Petitioner's entitlement to a bond hearing here is the same which the Court would undertake in determining whether an alien detained pursuant to §1226 is entitled to a bond hearing. *Accord Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018).

To determine whether an alien's due process rights have been violated as a result of his continued detention, the Court first evaluates whether the "alien [has been] held for an unreasonably long period." *Frederick v. Feeley*, No. 19-CV-6060, 2019 WL 1959485, at *2 (W.D.N.Y. May 2, 2019); *see also Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). If the alien has been detained for an unreasonably long period, the Court proceeds to analyze whether the alien has received sufficient process to justify his continued detention. *Hemans*, 2019 WL 955353, at *5. Applying this framework, the Court concludes that Petitioner is entitled to relief.

First, Petitioner's detention has been unreasonably prolonged. He has been detained for over one year. Indeed, after twelve months, courts "become extremely wary of permitting continued custody absent a bond hearing." *Fremont v. Barr*, No. 18-CV-1128, 2019 WL 1471006, at *4 (W.D.N.Y. Apr. 3, 2019) (collecting cases); *Bermudez Paiz v. Decker*, No. 18-CV-4759, 2019 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (sixteen-month detention unreasonable); *Dutt v. Nielsen*, 19-CV-155, ECF No. 21 at 4 (W.D.N.Y. May 7, 2019) (fifteen-month detention unreasonable); *see also Frederick*, 2019 WL 1959485 at *3 (noting that detention lasting longer than six months is more likely to be deemed unreasonable). Furthermore, this delay appears to be attributable to the normal administrative and appeals process. Although Petitioner has appealed his order of removal—inevitably extending his detention—the Second Circuit has made a

distinction between aliens who have "substantially prolonged [their] stay by abusing the processes provided to [them]" and those who have "simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6.  In other words, pursuit of relief from removal "does not, in itself, undermine a claim that detention is unreasonably prolonged." *Brissett v. Decker*, 324 F. Supp. 3d 444, 453 (S.D.N.Y. 2018); *see also Hemans*, 2019 WL 955353, at *6.  However, Respondents also assert that Petitioner has prevented his removal by refusing to cooperate.  ECF No. 4-1 at 17.  Specifically, because Petitioner refused to speak to the Ecuadorian Consulate on June 1, 2021, as scheduled.  ECF No. 4-2 ¶ 28.  No matter, as discussed above, the forbearance agreement applicable here renders Petitioner's non-compliance moot, as his removal would have nevertheless been paused until a decision on his PFR is rendered.  Thus, the Court will not fault Petitioner on this basis.

Second, the process Petitioner has been afforded is constitutionally inadequate.  Courts in this Circuit have frequently held that due process requires more than what immigration authorities provide.  The "consensus view" is that due process requires the government, not the alien, to prove continued detention is justified by clear and convincing evidence.  *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (collective cases); *see also Martinez v. Decker*, No. 18-CV-6527, 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018).  It does not appear that Respondents have provided Petitioner with a bond hearing or review of his detention since he was initially detained.  However, to the extent Petitioner seeks immediate release, the Court agrees with Respondents that it is not appropriate here.

Finally, as a procedural matter, the Court agrees with Respondents that the only proper respondent is Jeffrey Searls, the Assistant Field Office Director of the ICE Buffalo Field Office.  *See* ECF No. 4-1 at 20-21.  As the "person with direct control" over Petitioner's detention, *id.* at

21, he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 28-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally, the prison warden, to be named as a respondent in core immigration habeas proceedings—*i.e.*, those challenging present physical confinement." (quotation omitted)).

## CONCLUSION

For the reasons discussed above, the Court's prior Decision and Order, ECF No. 8 is VACATED, and the Court finds that Petitioner is entitled to habeas relief under 28 U.S.C. § 2241 and the petition is GRANTED IN PART and DENIED IN PART. The petition is granted against Respondent Searls and is denied with respect to the remaining respondents.

By October 8, 2021, Respondent Searls shall hold a bond hearing for Petitioner before an immigration judge, at which the government bears the burden of proving by clear and convincing evidence that Petitioner's continued detention is justified based on his present risk of flight or danger to the community. To conclude that detention is justified, the immigration judge must also find that no less restrictive alternative to detention that could reasonably assure Petitioner's appearance and the safety of the community exists. If a bond hearing is not held by October 8, 2021, Respondent Searls shall release Petitioner immediately with appropriate conditions of supervision. By October 15, 2021, Respondent Searls shall file a notice with this Court certifying either (1) that a bond hearing was held by the applicable deadline, and the outcome thereof, or (2) that no bond hearing was held and that Petitioner was released with appropriate conditions of supervision. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 29, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York